UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EILEEN E. JENKINS,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 15-2080 (JEB)

## MEMORANDUM OPINION

    For the past 25 years Plaintiff Eileen Jenkins has built a career as an architect for the District of Columbia. In 2011, her particular office was consolidated into D.C. General Services, Construction Division. Jenkins's lateral transfer into that Division is the foundation for many of her grievances today. Because she was transferred "as is," Plaintiff was required to apply for a new position within General Services in order to move onto the new D.C. pay scale. In 2014, she applied for two such jobs as a Project Manager – one of which was grade 13 on that pay scale, and the other of which was grade 14. Jenkins was offered only the lower position, which she subsequently declined.

    This case largely arises out of her non-selection for the grade 14 post, a decision that she alleges was the result of both race discrimination, in violation of Title VII and the District of Columbia Human Rights Act, and age discrimination, in violation of the Age Discrimination in Employment Act. Jenkins further claims that she was subjected to a hostile workplace at the Division, also in violation of Title VII. The District now moves for summary judgment on all counts, claiming that no reasonable jury could find Plaintiff's non-selection discriminatory or her

1

work environment hostile. This Court agrees and will grant Defendant's Motion.

**I.    Background**

Because the District is moving for summary judgment, the Court describes the facts in the light most favorable to Jenkins. See Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011). In 1992, Plaintiff was hired by the Design and Engineering Unit of the D.C. Public Schools as an architect. In 2008, that Unit was reorganized into the Office of Public Education Facilities Modernization (OPEFM). See ECF No. 20-1, Exh. B (Notification of Personnel Action). Three years later, Jenkins's job was again restructured when the OPEFM became part of the District of Columbia General Services, Construction Division (DGS). Id. at 20. For the transfers to both OPEFM and DGS, Jenkins was transferred "as is," meaning that her pay plan, title, grade, and step remained the same. See ECF No. 23 (Opposition to MSJ) at 6. At the time of her assignment to DGS, Jenkins was a grade 14, step 7 architect under the Education Service System (EG) pay scale. See Notification of Personnel Action.

In order to transfer from the EG scale to that used by DGS – the Career Service (CS) scale – Jenkins was told that she was required to apply for an open position within the Construction Division. Beginning in 2012, DGS posted numerous job openings for internal candidates, including multiple positions for grade 13 and 14 Project Managers. See ECF No. 20-1, Exh. C (Vacancies List). Although these vacancies were open to all employees, Jenkins did not apply for any. Id. Instead, she seems to have directed her energies toward contesting the terms of her lateral transfer. For example, Jenkins sent a series of emails and letters to D.C. Council members and to the mayor of the District, all of which discussed her alleged "pay disparity," ECF No. 23-3 (Email to Mayor Muriel Bowser) at 2, and perceived lack of adequate compensation. See ECF No. 23-3 (Email to D.C. Council Chairman Phil Mendelson); id. (Letter

to Council Member Kenyan McDuffie). The Court notes that, interestingly, none of these communications mentioned race or age discrimination as a basis for her disputes with DGS.

In March 2014, Jenkins finally submitted applications for two of the available DGS positions – Project Manager CS-14, #24562, and Project Manager CS-13, #24563 – both of which would have transferred her to the Career Service pay scale. See Opp. at 9. On March 26, 2014, DGS offered Plaintiff the CS-13 Project Manager position. See ECF No. 23-10 (Selection Certificate for CS-13). Even though this move might seem to have demoted her (from a grade 14 to a grade 13), the EG and CS pay scales are different. In fact, if accepted, this job would have increased Jenkins's salary from $81,642 to $86,056, as well as making her eligible for an additional 3% cost-of-living increase. See ECF No. 20-1, Exh. G (Offer of CS-13 Position). Jenkins nonetheless rejected the CS-13 offer, expressing her discontent with DGS's decision not to select her for the CS-14 position. See ECF No. 23-5 (Letter from Jenkins to June Locker).

In June 2014, Plaintiff filed a charge with the D.C. Office of Human Rights, alleging race and age discrimination. See Opp. at 10. DCOHR dismissed the charge and transferred the case to the Equal Employment Opportunity Commission. Id. The EEOC, in turn, did not sustain Jenkins's charges and sent her a Dismissal and Notice of Rights on September 1, 2015. Id. Although neither party has submitted the EEOC filings or records, the District does not argue that Jenkins failed to administratively exhaust her claims. The Court therefore proceeds under the assumption that this has properly occurred.

On December 1, 2015, Jenkins filed suit in this Court. Her Complaint alleges that she was treated differently by DGS because of her race, in violation of Title VII and the D.C. Human Rights Act, an assertion she bases largely on her non-selection for the CS-14 position. See Compl., ¶¶ 28-38. She also alleges age discrimination under the Age Discrimination in

3

Employment Act, stating that "less experienced similarly situated Architects and/or Project Managers under the age of 40 were hired at a higher pay scale and/or paid a higher wage than [Jenkins] for same or similar [work] performed during the relevant period." Id., ¶¶ 45-52. Finally, Jenkins brings a hostile-workplace claim under Title VII, alleging that as a result of her race and age, her "supervisors routinely humiliated [her] and engaged in [a] persistent pattern of severe and pervasive harassment." Id., ¶¶ 58-65. The District has now moved for summary judgment on all counts, asserting that there is no record evidence supporting any of Jenkins's allegations. See ECF No. 20 (MSJ).

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be

4

supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant is required to provide evidence that would permit a reasonable jury to find in his favor. See Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

**III.    Analysis**

There are a few issues to address before proceeding to Plaintiff's more substantive claims. First, the Court can easily dispose of her allegation that the District violated 42 U.S.C. § 1981. See Compl., ¶ 1. As Defendant notes in its Motion – and Jenkins concedes in her response – a plaintiff cannot sue a municipality under § 1981. See MSJ at 10; Opp. at 1. The District is correct that the Supreme Court has held that 42 U.S.C. § 1983, not § 1981, provides the exclusive remedy for discrimination and retaliation claims when the alleged violation is by a state actor. See Jett v. Dallas Independent School District, 491 U.S. 701, 109 (1989); Olatunji v. D.C., 958 F. Supp. 2d 27, 36–37 (D.D.C. 2013). The Court will therefore grant the District's Motion with respect to this count.

Second, there is the question of <u>which</u> decisions, precisely, Jenkins alleges were the result of race and age discrimination. Although her Complaint largely addresses her non-selection for the CS-14 position, it also makes certain broader allegations regarding her employment. Specifically, she asserts that she did not "have her pay scale properly changed," "[was] not being paid commensurate with her duties," and was "demoted in paygrade." Compl., ¶ 30. Plaintiff does not, however, offer any record evidence to connect these grievances with any race or age discrimination. Jenkins also generally contends that the District "limited, segregated and classified her in a way that deprived her of employment opportunities and otherwise adversely

5

affected her status as an employee because of her race." Id. She provides no evidentiary support for this unspecified claim beyond the denial of her CS-14 application. As this Circuit has held, "[T]he burden on a defendant moving for summary judgment may be discharged without factual disproof of the plaintiff's case; the defendant need only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to support a reasonable jury to find in her favor on one or more essential elements of her claim." Grimes v. D.C., 794 F.3d 83, 93 (D.C. Cir. 2015). Here, Jenkins's filings fall far below this "sufficient evidence" bar on claims unrelated to the CS-14 position.

Additionally, Plaintiff's briefing itself appears to concede that the only act at issue is her non-selection for the CS-14 opening. See Opp. at 11 (stating that the position at issue is CS-14, #24562); id. at 21, 24-25 (discussing discrimination count only in context of non-selection for CS-14 position). Indeed, in addressing the District's Statement of Facts, Jenkins expressly asserts that her claim is not based on the city's hiring decisions outside of the positions for which she applied. Id. at 7, 11. The Court will, consequently, consider her other claims as forfeited or insufficiently supported, and it will only address her non-selection as a CS-14 Project Manager and her hostile-work-environment claim.

A. Race Discrimination

1. *Legal Standard*

Jenkins alleges race discrimination under both Title VII and the DCHRA. These statutes prohibit "employers from intentionally discriminating on the basis of race with respect to the 'benefits, privileges, terms, and conditions' of employment." Ayissi–Etoh v. Fannie Mae, 712 F.3d 572, 576 (D.C. Cir. 2013). Because the same analytic framework governs discrimination claims under both laws, the Court will consider Jenkins's allegations of racial discrimination

6

under the federal standard. See McFadden v. Ballard Spahr Andrews & Ingersoll, LLP, 611 F.3d 1, 3, 6 (D.C. Cir. 2010) (Title VII analysis applies to discrimination claims under DCHRA).

To make out a claim under Title VII, a plaintiff may rely on direct or circumstantial evidence that "permits an inference of discrimination." Holcomb, 433 F.3d at 899. Where, as in this case, the plaintiff proffers only circumstantial support, her claim is governed by the familiar framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this test, a plaintiff must first make out a *prima facie* case by showing that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007) (citation omitted). In doing so, the plaintiff must show that "race, color, religion, sex, or national origin was a motivating factor" for the adverse employment practice, even if other factors contributed. See 42 U.S.C. § 2000e-2(m); Desert Palace, Inc. v. Costa, 539 U.S. 90, 101-02 (2003).

Once a plaintiff has made out his *prima facie* case, the burden then shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the challenged action. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254–55 (1981). If the employer articulates such a justification for its hiring decision, "the burden-shifting framework" then "falls away, and the 'central question' becomes whether 'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee.'" Allen v. Johnson, 795 F.3d 34, 39 (D.C. Cir. 2015) (quoting Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008)). At the summary-judgment stage, therefore, the inquiry typically collapses into one simple question: Given all the evidence, could a reasonable jury

7

conclude that the defendant engaged in intentional discrimination against the plaintiff? See Brady, 520 F.3d 490 at 494. That is not to say, however, that evidence of a *prima facie* case is wholly shunted from the inquiry on a motion for summary judgment. On the contrary, in answering the sufficient-evidence question, the Court must consider "the total circumstances of the case," including strengths and weaknesses in "the plaintiff's *prima facie* case," along with other evidence adduced by both parties during discovery. See Evans v. Sebelius, 716 F.3d 617, 620 (D.C. Cir. 2013) (citing Hamilton v. Geithner, 666 F.3d 1344, 1351 (D.C. Cir. 2012)).

2. *Merits*

Jenkins alleges that DGS did not select her as a CS-14 Project Manager because she is black. Specifically, Plaintiff asserts that she applied for "a position she was qualified for and was not chosen based on her protected trait," and that the record supports an inference that "it is more likely than not that a discriminatory reason motivated [her] employer." Opp. at 22-23. The District responds that Jenkins has failed to make out a *prima facie* case of race discrimination. It additionally argues that, assuming she did make such a showing, DGS made its hiring decisions for legitimate, non-discriminatory reasons, including that "management considered the internal candidates hired for the CS-14 positions to have a more extensive project management background than Jenkins." Reply at 2-3. Defendant contends that as Jenkins has not established a triable issue of fact with respect to this rationale being pretext, the District is entitled to summary judgment. Id. at 3.

The city is correct that the record does not support an inference of race discrimination. Indeed, the evidence does not even back up a number of Jenkins's <u>factual</u> assertions. Plaintiff contends, for instance, that the District "did not even consider her for the Project Manager CS-14 position, a position she was qualified for," citing to her April 22, 2014, letter to the hiring

8

official, June Locker, in which Jenkins wrote that she "was only considered for the grade 13 position, without the benefit of interviewing/discussing my qualifications for the grade 14 position." Opp. at 23; Letter to June Locker. Yet Plaintiff neglects to address two other exhibits she herself submitted showing that she <u>was</u> in fact considered for the CS-14 opening. See Exh. D (Email from Cecilia Bankins) (stating that Jenkins was referred to Locker "for both the CS-13 and CS-14 positions"); Exh. P (Selection Certificate for CS-14 Posting) (listing Jenkins as a "candidate submitted for consideration"). Although the Court does not typically weigh conflicting evidence at summary judgment, Jenkins's statement that she was "not even consider[ed]" for the CS-14 position is undermined by her own submissions. This allegation thus cannot support a race-discrimination claim.

Another of Jenkins's assertions regarding her non-selection for the CS-14 position is even more egregiously off the mark. Plaintiff states that she was treated "less favorably because she is African American," reciting the standard that "a showing that a member outside of the protected class received a promotion instead of the plaintiff is sufficient to create an inference of discrimination." Opp. at 22 (citing <u>McCaskey v. Henry</u>, 461 F. App'x 268, 270 (4th Cir. 2012)). She maintains that "it is undisputed that Robbie Stewart, Anthony Goodman and Cassidy Mullen are white and were the selections to fill the DGS – Project Manager CS-14, #24562 positions." <u>Id</u>. Jenkins then cites to three exhibits, none of which suggests that those three individuals were actually selected. See Exh. D (Letter from Cecelia Bankins to Eileen Jenkins); Exh. E (Letter to June Locker from Eileen Jenkins); Exh. T (Personnel List). Another of Plaintiff's exhibits <u>does</u>, however, show who was hired for the #24562 openings – Eupert Braithwaite, Ugur Ertem, Dwight Goupal, and Emmanuel Nnnoli. See Exh. P (Selection Certificate for Posting #24562, CS-14). The Division's personnel list (also submitted by Jenkins) establishes that none of these

9

individuals is, in fact, white. Instead, the list supports the District's assertion that DGS "selected four minorities," Reply at 4, as Braithwaite, Goupal, and Nnoli are black, and Ertem is Asian. See Personnel List. All Jenkins had to do in order to correctly determine the race of those selected for the CS-14, #24562 position was to reference her own evidence. Her clear misstatement of the evidence is alarming and borders on the sanctionable.

Looking at the actual record in this case, it becomes clear that the race of the individuals selected for the CS-14 positions presents a formidable obstacle to Plaintiff's Title VII claim. Because the District has presented a non-discriminatory rationale – namely, that DGS selected better-qualified internal candidates for the CS-14 position – Jenkins must show that this justification was a pretext for race discrimination. At this stage, the question for the Court is whether a reasonable jury could infer that her non-selection for the CS-14 position was in fact due to discriminatory animus. With respect to this inquiry, the fact that a contested position was filled by members of the same race "cuts strongly against any inference of discrimination." Murray v. Gilmore, 406 F.3d 708, 715 (D.C. Cir. 2005) (noting that although plaintiff may make out *prima facie* case without showing that she was passed over for candidate outside of her protected class, hiring of individual within that class is highly relevant to determining whether plaintiff can show pretext).

Here, Jenkins asserts that she can show discrimination because she had "more experience than four individuals who were white." ECF 23-19 (Declaration of Eileen Jenkins). Yet, in light of the races of the candidates who were actually hired for the CS-14, # 24562 Project Manager positions, this argument is simply nonsensical. With respect to the three black hirees, moreover, the selection of individuals within Jenkins's protected class largely undermines any possible inference of discriminatory animus. With respect to the one Asian hire, Ugur Ertem, Jenkins

must rebut the District's contention that Ertem was a stronger internal candidate. This she cannot do. According to the Personnel List, Ertem was already at a grade-15 level and in a supervisory position within the Division when he was selected as a CS-14 Project Manager. See Personnel List at 2. In order to "establish discriminatory intent" by "comparing qualifications," a plaintiff must show that she is "significantly better qualified than the person who obtained the position." Hussain v. Nicholson, 435 F.3d 359, 365 (D.C. Cir. 2006) (citation omitted). Plaintiff falls far short of this standard, as she provides no explanation of why she, as a grade 14 architect, was in fact better qualified than Ertem (or any other candidate) for the contested position.

Jenkins may well believe that she was "overqualified" for the CS-13 opening and "better suited" for the CS-14 position. See Opp. at 10. Yet this Court does not sit as a "super-personnel department that reexamines an entity's business decisions." Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996), and thus declines to second guess the District's hiring practices in the absence of any support for Jenkins's claim of discriminatory intent. Looking at all the evidence *in toto*, as the Court must after Defendant offers a non-discriminatory rationale, it is abundantly clear that no reasonable jury could infer that she was "treated differently based upon her status as an African-American." Opp. at 23. Because there is no triable issue of fact as to the District's proffered explanation, the Court will grant the Motion for Summary Judgment on this count.

    B. Age Discrimination

To prevail on a claim of age discrimination, a plaintiff must show that: (1) she "suffered an adverse employment action"; and (2) that the employer took that action "because of" her age. Brady, 520 F.3d at 493; see also Wilson v. Cox, 753 F.3d 244, 247 (D.C. Cir. 2014) (noting that courts "generally apply the same approach in ADEA cases . . . as [they] do in Title VII cases").

11

As with Title VII, once an employer has proffered a legitimate non-discriminatory reason for its action, the only question for the Court is "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." Adeyemi v. District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008).

Here, Jenkins asserts that the District hired "individuals who were younger than Plaintiff to fill the position of CS-14 Project Manager." Opp. at 25; id. at 26 (stating that "District chose four younger employees for CS-14 Project Manager positions"). Once again, Plaintiff provides no evidence to support this allegation, and that omission is sufficient to doom her claim. The District, however, has also done itself no favors by failing to submit records establishing the ages of the four individuals selected for the CS-14 position. The city asserts that "all applicants" for the open positions "were over forty years of age," but then cites only to its own general counsel's letter to the EEOC. See MSJ at 13. Such legal advocacy cannot, at summary judgment, pass for record evidence establishing that there is no triable issue of fact.

Yet, even assuming that the four individuals hired for the CS-14 position were under the age of 40, Jenkins's age-discrimination claim still cannot proceed. This is because the District offers a non-discriminatory rationale for its hiring decision – namely, that the individuals selected were either at a higher grade than CS-14 or already in a supervisory position. See Reply at 5. Because the District offers such an explanation, the burden shifts to Plaintiff to demonstrate pretext. She does not succeed.

As just mentioned, the personnel list shows that the four individuals hired for the CS-14, # 24562 openings were each at either a higher pay grade than Jenkins or in a supervisory position at the time they were selected. Three of the four were already at the CS-15 level and thus took a

12

grade demotion when they accepted the CS-14 posting. The other, Emmannuel Nnoli, was at the CS-14 grade at the time of selection, but was already in a supervisory role within the Division. See Personnel List. Jenkins, meanwhile, was an EG grade-14 architect with no supervisory title. Although, as already indicated, the grades are not equivalent across pay scales, a CS-13 was paid more than an EG-14, and the CS pay scale was considerably higher overall. See ECF No. 20-1 at 29, 58 (EG and CS pay scales). Yet Plaintiff provides no explanation for why she was better, or even equally, qualified for the CS-14 position than the four individuals selected. Although Jenkins asserts that she had over "10 years' experience at the time and degrees in Architecture and Construction," Opp. at 27, she is unable to show that such experience casts any doubt upon Defendant's decision to hire candidates who already held higher-paying positions within the Division. Because Jenkins provides no evidence supporting an inference that the District's hiring decision was based on age rather than legitimate reasons, she cannot establish a material issue of triable fact with respect to her ADEA claim.

    C. Hostile Work Environment

In addition to alleging that her non-selection for the CS-14 position was the result of discrimination, Jenkins also contends that the District violated Title VII by creating "a hostile or abusive work environment that is discriminatory." Opp. at 27. In support of this position, she broadly asserts that she "was routinely and continually subjected to harassing conduct," Compl., ¶ 59, and that in particular, "while working on an assignment," her supervisor, Maurice Dunn, "yelled and berated [her] in front of her co-workers." Opp. at 11.

An office becomes "hostile" for the purposes of Title VII only if the allegedly offensive conduct "permeate[s] [the workplace] with 'discriminatory . . . intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

13

create an abusive work environment." Harris v. Forklift Sys. Inc., 510 U.S. 17, 21-22 (1993) (internal quotation omitted). The Supreme Court has explained that determining whether a hostile workplace exists has both subjective and objective components, with the latter judged "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (internal quotations and citations omitted).

Here, the District has not challenged Jenkins's subjective belief that she experienced a hostile work environment. What remains, consequently, is for the Court to determine the objective reasonableness of her allegations. Considering the evidence in the light most favorable to Plaintiff, the record shows no basis upon which a reasonable jury could find in her favor. Indeed, Jenkins's assertions regarding the alleged workplace harassment and abuse do not approach the standard for establishing such a claim.

First, her generalized claim regarding harassing conduct lacks any specific evidentiary support. Plaintiff's perfunctory statement that she was once "yelled [at] and berated" in front of her co-workers, moreover, does not rise to the level of "severe or pervasive" abuse. See ECF No. 23 (Response to Interrogatories) at 8-9. Although many employees may wish it were otherwise, Title VII sets a high bar for the types of behavior that create a hostile workplace. As courts have repeatedly held, a plaintiff cannot prevail simply by alleging that she was subject to humiliation or one specific instance of mistreatment. Aldrich v. Burwell, 197 F. Supp. 3d 124, 135 (D.D.C. 2016) (stating that hostile work environment typically arises not "from discrete acts," but from "several individual acts that . . . become actionable due to their 'cumulative effect'"); Pitts v. Howard Univ., 111 F. Supp. 3d 9, 24 (D.D.C. 2015) (noting that conduct alleged "must be extreme to amount to a change in the terms and conditions of employment,"

14

and thus satisfy hostile-environment standard). Title VII does not establish a "general civility code for the American workplace," and the behavior alleged here is not "so objectively offensive as to alter the conditions" of Jenkins's employment. See Oncale, 523 U.S. at 80-81 (internal quotation omitted).

Second, and more fundamentally, Jenkins seems to ignore the requirement that, in order to violate Title VII, the "intimidation, ridicule, [or] insult" must be discriminatory – *i.e.*, "because of the employee's protected status." Peters v. District of Columbia, 873 F. Supp. 2d 158, 188–89 (D.D.C. 2012) (citation omitted). Court have "routinely held that hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class." Na'im v. Clinton, 626 F. Supp. 2d 63, 73 (D.D.C. 2009); see Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (upholding summary judgment on plaintiff's hostile-work-environment claim in part because "none of the comments or actions directed at [plaintiff] expressly focused on his race, religion, age, or disability"); Chaple v. Johnson, 453 F. Supp. 2d 63, 73-74 (D.D.C. 2006) (observing that "[i]t must be clear that the hostile work environment was the result of discrimination based on a protected status"). Here, Plaintiff submits not a shred of evidence that the alleged episode of yelling was related to unlawful discrimination, and she offers only the conclusory statement that the general and unspecified harassment was "based on her race (African American) and her age." Compl., ¶ 63. Because Jenkins is unable to show a "correlation to the claimed ground[s] of discrimination," she presents no issue of triable fact for a jury with respect to this count. See Bryant v. Brownlee, 265 F. Supp. 2d 52, 63 (D.D.C. 2003).

## IV. Conclusion

Although Jenkins may feel aggrieved by the circumstances of her bureaucratic transfers, she fails to demonstrate a triable issue of fact with respect race or age discrimination, or her hostile-work-environment claim.  For the foregoing reasons, the Court concludes that the District is entitled to summary judgment and will grant its Motion.  A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  November 21, 2017